UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VARINDER S.,

          Petitioner,

      v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY,

          Respondent.

No. 1:26-cv-00634-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Varinder S.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 8).[1]  Respondent filed an opposition and motion to dismiss.  (ECF No. 9.)  Petitioner replied.[2]  (ECF No. 16.)  For the reasons set forth below, the Court issues a TRO requiring Respondent to IMMEDIATELY RELEASE Petitioner.  Respondent's motion to dismiss is DENIED.  (ECF No. 9.)  Respondent is further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

---

[1]    Since Petitioner's initial filing of his habeas petition, the Court appointed counsel who is now enrolled in this case and has filed briefs on behalf of Petitioner.  (ECF Nos. 11, 13, 15, 16.)

[2]    Instead of filing a reply as the Court's January 28, 2026 Order instructed, Petitioner filed a First Amended Petition for Writ of Habeas Corpus (ECF No. 15) and Motion for Temporary Restraining Order ("TRO") (ECF No. 16).  The Court notes the First Amended Petition was untimely filed and cautions counsel to pay closer attention to deadlines in the future.  As the Court directed Petitioner to file a reply — not another motion — Petitioner's motion for TRO is construed as Petitioner's reply brief and is otherwise DENIED as moot.  (ECF No. 16.)

1

## I.    FACTUAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) Petitioner entered the United States without inspection in May 2022.  (*Id.* at 5.)  After a brief detention for approximately three to four days, Petitioner was released on his own recognizance. (*Id.*)  Later in 2022, Petitioner applied for asylum with the assistance of an immigration attorney and the asylum application is still pending.  (*Id.*)

Petitioner was convicted of misdemeanor battery in November 2022, sentenced to a term of 30 days in Douglas County Jail, and fined $640.  (*Id.* at 6; ECF No. 9-1 at 13; ECF No. 16-1 at 2; ECF No. 16-9 at 4–6.)  Petitioner asserts he otherwise has complied with every term and condition of his release, including all his in-person check-ins.  (*Id.* at 5.)

On October 29, 2025, Petitioner was notified by a U.S. Immigration and Customs Enforcement ("ICE") officer to report in-person at the Stockton field office.  (*Id.*)  After reporting to the office, Petitioner was taken into custody on the same day without notice, a warrant, or a hearing.  (*Id.*)

On January 26, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking immediate release. (*See* ECF No. 1.) On January 28, 2026, the Court issued an Order construing Petitioner's *pro se* request for injunctive relief as a motion for TRO and ordered Respondent to file a response.  (ECF No. 8.)  In response, Respondent filed a motion to dismiss the Petition.  (ECF No. 9.)  As stated above, the Court construes Petitioner's motion for TRO as a reply.  (ECF No. 16.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

///

2

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.    ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A.    Likelihood of Success on the Merits

Petitioner establishes a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### i.    Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

3

statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he has a protected liberty interest, as he was previously released on his own recognizance in May 2022. (ECF No. 1 at 5.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner's liberty interest has been strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest). Thus, Petitioner has a clear interest in his continued freedom.

Respondent argues in opposition that: (1) at the time of Petitioner's arrest, he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") because he is an "applicant for admission;"[3] and (2) Petitioner's prior release was properly revoked pursuant to 8 U.S.C. §

---

[3]     Respondent also requests the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). (ECF No. 9 at 2.) The Court denies this request. As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

1226(b) ("§ 1226(b)") because of his criminal conviction for battery.[4]  (ECF No. 9 at 1–2.)  First, with respect to the § 1225(b)(2) argument, this Court has ruled on this same issue countless times and courts throughout the Ninth Circuit have overwhelmingly rejected Respondent's legal position to find the government's re-classification of individuals under the mandatory detention policy unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).  As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts.  Respondent provides no such grounds for reconsideration.  (*See* ECF No. 9.)  Second, with respect to the § 1226(b) argument, the Court agrees with Petitioner that § 1226(b) does not convert custody into mandatory detention or eliminate bond jurisdiction — rather, it means Petitioner is placed back into § 1226 custody, which requires a bond hearing.  (ECF No. 16-1 at 3.)

Thus, at the time of Petitioner's detention, Petitioner was not an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum.  Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

///

---

[4]  To the extent Respondent argues detention is mandatory under 8 U.S.C. § 1226(c), the Court agrees with Petitioner that his conviction does not place him in any § 1226(c) category. (ECF No. 16-1 at 4.)  Section 1226(c) provides mandatory detention of a noncitizen if the noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(ii).  Petitioner was convicted of misdemeanor battery, which does not fall under the purview of § 1226(c).  *See Fuentes Reyes v. Wolf*, No. 2:19-cv-02086-GMN-EJY, 2020 WL 2308075, at *12 (D. Nev. May 8, 2020) ("[M]isdemeanor battery is not a very serious crime under Nevada law, the INA, or federal case law.  Misdemeanor battery is not listed amongst the category of crimes imposing mandatory detention[.]" (citing 8 U.S.C. § 1226(c)).

*ii.*     *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner asserts that since he was released from custody in 2022, he has built a life in the United States, was issued a work authorization, and was working as a truck driver and helping his brother financially. (ECF No. 1 at 5–6.) Petitioner also asserts he is a patient of hypertension and migraine but due to poor medical assistance in detention, he cannot sleep at night because of excessive pain. (*Id.* at 6.) Finally, Petitioner notes he was working and taking care of himself and his brother, but due to his detention he is struggling financially and not able to pay his attorneys' fees for his immigration proceedings. (*Id.*) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Indeed, Petitioner notes that he has not received any hearing in front of a neutral decisionmaker. (ECF No. 1 at 6.) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent

6

under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Respondent does not argue that Petitioner is a danger to the community or a flight risk. (*See generally* ECF No. 9.) Therefore, on the record before the Court, at the time Respondent detained Petitioner, Respondent had no legitimate interest. Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody hearings are routine processes for Respondent with minimal burden. Indeed, these are the very processes that were owed to Petitioner under § 1226(a). Any delay in re-detention (if justified) for time to provide notice and a hearing would have been minimal. It is also less of a fiscal and administrative burden for Respondent to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

In balancing the government's interest in effectuating immigration laws against the considerable potential for erroneous deprivation and Petitioner's liberty interest, the Court finds that Petitioner was entitled to notice and a hearing at minimum. Respondent did not provide either. Nor did Respondent provide a post-deprivation bond hearing as required under § 1226(a). Thus, Petitioner has shown he is likely to succeed on the merits of his due process claim.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without

relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioner has sufficiently established irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondent to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at \*11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

///

///

///

8

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED;

2.  Respondent's motion to dismiss is DENIED (ECF No. 9);

3.  Respondent must IMMEDIATELY RELEASE Petitioner Varinder S. from custody under the same conditions he was released prior to his current detention.  Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondent must file a notice certifying compliance with this provision of the Court's Order within one court day of the electronic filing date of this Order**;

4.  Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

5.  Respondent is ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner.  Respondent shall file responsive papers within **ten days of the electronic filing date of this Order**.  Petitioner may file a reply, if any, **within thirteen days of the electronic filing date of this Order**.  **The parties shall indicate in their briefing whether they request a hearing**.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

6.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 10, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE